SARAH A. DUPREE v. THE VIRGINIA HOME INSURANCE Co.

*Continuance— Evidence—Agent— Juror— Challenges—Issues—*
*Insurance— Witness, Examination of—Issues—*
*Judge's Charge.*

1. The granting or refusing a continuance is entirely discretionary with the presiding Judge, and cannot be assigned for error on appeal.

2. In an action on a policy of insurance, where the defence is over valuation, it is competent for the plaintiff to prove that insurance was effected the year previous on the same property in another company, through the same general

agents by whom the policy in suit was issued, and that before the former policy was issued an agent examined and valued the property, although such agent was not the agent of the defendant company. Such evidence is admissible, not on the ground of binding the defendant with the knowledge acquired by such agent, but to show what information the general agents were in possession of when they issued the policy in suit.

3. The Court may permit a paper to be read in evidence before its execution has been proved, when the party introducing it undertakes, at a subsequent time, to prove the execution.

4. Where concurrent insurance is effected in different companies, all represented by the same general agent, an examination and valuation made by a subordinate agent of one of the insurers, is admissible in evidence against all who act on his report, and the same rule applies to successive insurance in different companies.

5. The admission of immaterial evidence cannot be assigned as error.

6. A party's reason for peremptorily challenging a juror cannot be inquired into. The law gives to a litigant the right to object to a limited number of jurors without assigning any cause.

7. It is incompetent to prove what a witness swore on a former trial, when the witness can, himself, be put on the stand.

8. Where a witness has been questioned in regard to certain matters in his examination in chief, it is discretionary with the Judge whether he will allow further questions to be asked the witness in regard thereto, after the cross-examination has been completed.

9. Refusal to allow further testimony after the case has been closed, is matter of discretion and not subject to review.

10. Issues which embrace all the substantial matters of defence developed in the pleading and necessary to a determination of the action, are sufficient.

11. When requested to do so in apt time, the Judge must put in writing so much of his charge as embodies principles of law, but he cannot be forced to put the recapitulation of the evidence in writing.

12. It is not error in the Judge to omit to charge the jury upon matters of law which can only arise upon the verdict, and have no bearing on the questions to be considered by the jury.

13. The strict accuracy required in applications for insurance, in order to bind the insurer, is in the statement of facts, and not matters of opinion as to the value of the property, unless intended to obtain some unfair advantage.

(*State* v. *Scott*, 80 N. C., 365; *Capehart* v. *Stewart*, 80 N. C., 101; *Gadsby* v. *Dyer*, 91 N. C., 311; *Wood* v. *Sawyer*, Phil., 251; *Currie* v. *Clark*, 90 N. C. 355; *Bobbitt* v. *The Insurance Company*, 66 N. C., 70, cited and approved).

CIVIL ACTION tried before *Avery, Judge,* and a jury, at February Term, 1884, of WAKE Superior Court.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Messrs. Armistead Jones* and *A. M. Lewis & Son,* for the plaintiff.
*Messrs. D. G. Fowle, J. W. Hinsdale* and *Jno. Devereux, Jr.,* for the defendant.

SMITH, C. J.    The plaintiff's action is upon a policy of insurance against fire, issued by the defendant company on the 3rd day of October, 1879, and its object the recovery of damages for the loss of a store-house and certain articles of personal property therein, that were burned on the 21st day of the same month.    Besides controverting some of the allegations contained in the complaint, the answer sets up as a defence against the demand, false representations alleged to have been made in the plaintiff's application for insurance, as to the value of the property proposed to be insured, and her failure, after the fire, to furnish, under oath, to the adjusting officer of the company sent to make examination, the full and detailed specifications of the building, its cost, and the other particulars required under the terms of the contract.    The defendant avers that the house and other articles are knowingly estimated by the plaintiff at double their real value, as grouped in her application, at the time; and these false and fraudulent estimates, as an inducing influence, enter into and vitiate the contract of insurance, and exonerate the company from any liability under it.

The aggregate valuation distributed among the several kinds of property, is put in the application at $1,700, whereof the sum of $1,132, not quite two-thirds, also ratably apportioned, is protected by the policy issued in response.    Some discrepancy appears in the enumeration of the several sums covered by the policy, which, added, make $1,066 and not the entire amount of the insurance.    But the variance was not adverted to in the argument, nor does it affect the merits of the controversy, and we

notice it only to show that it has not been overlooked in examining the record. The parties accept the first-mentioned sum as that in dispute and this is assumed in the verdict for damages.

From the conflicting allegations made in the pleadings, issues in the form of inquiries are drawn out and were submitted to the jury, which, with the responses to each, in substance are as follows:

1. Did the defendant company issue the policy mentioned in the complaint? Answer—Yes.

2. Was the property covered by it destroyed by fire? Answer—Yes.

3. What was its first cost? Answer—$1,700.

4. What was the value of the house and other insured property at the time of application for insurance, separately estimated? Answer—Value of the house, $800; general merchandise, $600; counter, shelves, &c., in the house, $100; show cases, scales, drawers and furniture, $100.

5. What the value when destroyed by fire? In answer the jury make the same estimates, except that the general merchandise is valued at $750, an excess of $150 over the former.

6. Did the plaintiff know or have reason to believe that the property or any part of it was overvalued in her application? Answer—No.

7. What was the value of the property destroyed by the fire? Answer—$1,750.

8. Did the plaintiff furnish proof of loss in compliance with the conditions of the policy? Answer—Yes.

9. Had a store-house located on the same land, and near the same site, been burned within three years next before the plaintiff's application? Answer—Yes.

10. If so, and it was insured, by what company and for whose benefit was the insurance effected? Answer—By the Virginia Fire and Marine Insurance Company and for the benefit of W. E. Dupree.

In pursuance of these findings, judgment was rendered for the plaintiff, and the defendant appealed.

The exceptions, thirty-six in number, to which is added another in the brief for the appellant, not found in the record, were taken during the various stages of the trial up to the final judgment, to rulings of the judge in the reception of evidence objected to—in the rejection of evidence offered by the appellant—in the framing of issues—in the refusal to give instructions asked—in the giving of such as are shown in the charge, and in other matters appearing in the transcript. These exceptions will be considered *seriatim* in the order of their enumeration.

(1) The defendant's counsel moved for a continuance on account of the absence of a witness, the grounds for which were deemed insufficient by the court, and for this reason, as also in the exercise of a judicial discretion, the motion was denied. If repeated and uniform rulings that the granting or refusing a continuance of a cause is not a subject of appellate review are to have any force, this must be considered as settled. *State* v. *Scott*, 80 N. C., 365.

(2) The second exception is to the admission of proof of an application made by the plaintiff the preceding year, to the Virginia Fire and Marine Insurance Company, through the same general agency of Cameron, Hay & Co., by whom the present insurance was effected, upon the same substantial statement of facts in the application as far as pertinent to the controversy, her notification by these agents of the approaching termination of the time of insurance, and renewal solicited, her being supplied by them with a form of application to the defendant company, filled up, returned and policy issued, and that the first application was filled up, and the responses made out under the supervision of an agent of that company, sent to make a personal examination of the premises, preparatory to the issue of its policy. We do not see any valid objection to the proof of these facts. It was not offered to connect the defendant with the agent, so that from the relation, the knowledge acquired by the latter is in law to be deemed the knowledge of the principal and thus preclude the defendant from impeaching the plaintiff's valuations as false and fraudulent, but to show upon what information, in possession of

Cameron, Hay & Co., the policy involved in this suit was issued and why no further inquiry was considered necessary. An examination which warranted the first, might well be considered, in the absence of any suggested change in the condition or value of the property, sufficient to authorize the issue of the last.

Moreover, the plaintiff sought a re-insurance in the same company, and the substitution of the defendant was the unasked act of the general agency, under an authority conferred and used at the discretion of the agency, and in which the plaintiff, indifferent in the matter, acquiesced. She ought not, therefore, to be placed in a less favorable position than she would be if the same company had re-insured.

The general agents did not, therefore, exclusively rely upon the plaintiff's estimates, but were in possession also of the information supplied by the personal inspection of the agent of the former company, when they chose to transfer the application to the defendant, and both are in harmony with the plaintiff's statement in the present case.

The material and important question then and now is, was there an *intentional* over-valuation, not a mere error in judgment, if the estimates were put too high, and this is solved by a verdict which declares that the property was respectively worth the sums at which it is valued in the application, and that consequently there was no misrepresentation fraudulent or otherwise in the application.

(3 and 4) The production of the notice and the letter with the former and the present policies, finds support in the same consideration. In the notice, Cameron, Hay & Co. call themselves "General Insurance Agents," and in neither do they designate their principals. The objection to the reading of these papers until their authenticity was shown and the admission of them on condition of proof thereafter, was removed by subsequent evidence of their genuineness.

(5) The objection to the testimony that, upon the plaintiff's first application to Cameron, Hay & Co., an agent came out and

saw and valued the property, pursuant to which the former policy issued, and that they had the same information when the defendant, through the same agents, entered into its contract with the insured, is met with the same answer given to a similar preceding one, and is equally untenable.

It is certainly competent to show the source and extent of the information possessed by the general agents, and which prompted their action in the premises, and to repel the imputation of a false and fraudulent representation of value on the part of the plaintiff. It is manifest that if a divided insurance had been obtained in different companies, all represented by the same agency upon an examination and estimate made by a subordinate agent of one of them, he would stand in the same relation to each, and be, to this extent, the common agent of all who act upon his report. Why should not the same rule prevail when successive insurances in different companies are secured? The testimony was properly admitted.

(6 to 11) inclusive, and 16 and 17 exceptions, relate to evidence offered to identify the person of the agent, by proof of his hand-writing in the application, and that while he was in the service of the former, he was not in the employ of the present insuring company, and may be considered together as presenting the same general proposition in varying aspects. While there is no sufficient reason, intrinsic in the evidence itself, for its exclusion from the jury, it is obviously immaterial, so that no error can be assigned in the ruling. It is unimportant that the person that made the examination of the property and concurred in the estimate of its value, was acting at the time for the former company, for the information was communicated to the firm that issued both policies, and had authority from each to do so. From whatever source derived, the general agents had the same knowledge, and it is their possession of the information which in law is imputed to their principals and imposes the obligation.

(12) The inquiry as to the plaintiff's reason for the peremptory challenge of a juror, with a suggestion of its being because the

juror resided in her neighborhood, was rightfully disallowed. The law gives to a litigant the right to object to a limited number of tendered jurors without assigning cause, and its exercise cannot be called in question to his prejudice in the mode here attempted. This, if any authority were needed, is decided in *Capehart* v. *Stewart*, 80 N. C., 101.

(13, 14½, 15) These exceptions having been abandoned we forbear to comment upon them.

(14) The offer to prove that a witness who had not been introduced at the present trial swore, on his former examination, as to the value of the insured property, was promptly and properly denied. The correctness of this ruling is too obvious to require more than a reference to *Gadsby* v. *Dyer*, decided at last term, 91 N. C., 311, and what is said in the opinion filed in that case.

(18, 20) These exceptions involve a question of practice, and the testimony was not received, because not offered in apt time. The defendant proposed to inquire of its witness, J. A. Rhodes, after the conclusion of the cross-examination by the plaintiff, whether his estimate of the cost of such a structure as that burned (which he had put at $350 on his first examination) was based upon his knowledge or was "*mere guess work*," as he had said in his cross-examination by the plaintiff. The answer would have been but a repetition of the testimony in chief, with the explanation given in response to the plaintiff's inquiry into the value of the opinion, as embodied in the estimate, and thus the same subject matter would again come up. It was entirely competent for the Judge, while in his discretion to admit, to arrest the proposed re-examination for the reason which he assigns.

The other exception is to the refusal of the Court, after the witnesses on both sides had been heard and the plaintiff's testimony in reply was closed, to permit the defendant to introduce evidence to contradict the statement of P. C. Dupree, that he had on the other trial contradicted a deceased witness. The statement was elicited upon his examination by the defendant and not in answer to any interrogatory from the plaintiff. The testimony

was disallowed, as reopening the case after it was closed, for no sufficient reasons addressed to the discretion of the Court to warrant a relaxation of the rule. The refusal presents no point for review upon appeal, and the practice is clearly and distinctly marked in the well considered opinion of the Court in *Sawyer* v. *Wood*, Phil. 251, 274, delivered by Mr. Justice Reade.

(19) The testimony of a witness for the defendant, who had been examined at the previous trial and had since died, one J. W. Dodd, was reproduced by one who had heard his former statement, that a conversation occurred between the plaintiff and her brother, the said P. C. Dupree, in which the former said the house had cost her nearly $400, and that some small addition of lumber afterwards had run it up $10 or $15 more.

The said Dupree, for the plaintiff, denied that any such conversation occurred, or that he had ever heard the plaintiff say how much money she had expended on the building.

Upon cross-examination the witness admitted, that as to this, the testimony of the deceased witness was in conflict with his own, and thereupon he was asked, with a view of impeaching him, whether he knew the handwriting in the body of the application and the signature thereto.

We are unable to see in the question, or the answer it may bring out, any tendency to impeach the truthfulness of the witness himself, or to impair the force of his testimony. At least this is not sufficiently pointed out in the record to show its pertinency and bearing in that direction, and the error in not permitting the inquiry to be made. How can the witness's knowledge, or want of knowledge, of the writing disprove what the witness says in regard to the conversation, or what his sister said at any other time in his hearing?

The discrediting interrogations that put the witness in antagonism to the reproduced testimony of Dodd, and which antagonism he admits, seem to be directed, not to the written answers found in the application, but to the plaintiff's verbal declarations, and especially that spoken of by the deceased witness.

The exception must be overruled.

The series of issues, ten in number, while the subject of complaint in the eleventh exception taken by the appellant, in our opinion present the controversy in all its essential aspects to the minds of the jury, whose findings negative all the forms of defence set up to the plaintiff's claim.

These findings determine the separate values of the house and articles therein as grouped in the estimates, at the time of the fire, their original cost as a whole, the absence of knowledge of, or of intended over-valuation in the plaintiff's application, the measure of her loss from the fire, a full compliance with the requirements of the policy in furnishing proof of the loss, and that the plaintiff had no interest in a previous insurance of a house upon the same premises by W. E. Dupree.

Without considering separately the exceptions that relate to the form of the issues framed and passed on by the jury under the sanction of the court, it is sufficient to say that these embrace all the substantial matters of defence developed in the pleadings and necessary in the determination of the action, on which the defendant was entitled to a response from the jury, comprehended in the general terms of an inquiry, while, in some cases, not subdivided and presented in the specific form tendered for the defendant.

We, therefore, overrule these exceptions.

We now proceed to consider the defendant's prayer for instructions and those given by the court.

The defendant's counsel requested that the jury be charged:

1. That the application upon which the policy of insurance was issued forms a part of the contract of insurance and is a warranty by the assured.

2. That the application being in the nature of a condition precedent, the burden of proof is upon the plaintiff to prove the truth of its representations.

3. That a representation as to the value of the property insured is material.

4. That the doctrine of immateriality does not apply in a case where the representation forms a part of the contract, and is made in response to a direct question.

5. That it is sufficient to avoid the policy, that the representations were false, however honestly made.

6. That the burden of proof is upon the plaintiff to satisfy the jury that the property insured was as to each item, worth the value placed upon it.

7. That there is no evidence that any agent of the Virginia Home Insurance Company ever inspected or valued the building or shelves, counters or drawers insured.

8. That there is no evidence that any agent of the Virginia Home Insurance Company ever inspected or valued the stock of goods, show case, scales and bed-room furniture insured.

9. That there is no evidence that any agent of Cameron, Hay & Co., ever inspected or valued the property insured or any part thereof.

10. That there is no evidence that the Virginia Home Insurance Company, or any of its agents, had any personal knowledge of the value of the property insured.

11. That if the jury shall believe that a former agent of Cameron, Hay & Co., acting for the Virginia Fire and Marine Insurance Company, examined and valued the building, shelves, counters and drawers insured, there is no evidence that he communicated his knowledge to Cameron, Hay & Co.; and the Virginia Home Insurance Company are not in any way affected by said knowledge of Cameron, Hay & Co. not communicated to them.

12. That there is no evidence that in any way fixes on the defendant either actual or constructive knowledge of the value of the property insured, outside of the application on which the policy was based.

13. That it is incumbent on the plaintiff to satisfy the jury, by a preponderance of evidence, that the cost price of the property insured to the plaintiff was $1,700.

14. That there is no evidence that the property insured cost her $1,700, and that the jury must find upon the issue upon this subject in favor of the defendant, that is, that the property did not cost $1,700.

15. That if the jury shall believe as testified by the plaintiff, that her son, by her permission, built a house upon her land, which was, a year or two before the date of the policy sued upon, destroyed by fire, that they must find the 9th issue in favor of the defendant.

16. That the burden of proof is upon the plaintiff to show that she has furnished to the company the proof of loss required by the policy, containing a particular account of such loss, signed and sworn to by her.

17. That there is no evidence that she has furnished the defendant with the required proof of loss as to the general merchandise.

18. That there is no evidence that the plaintiff has furnished the defendant with the required proofs of loss for the scales, drawers and bed-room furniture.

19. That there is no evidence that the defendant has waived such proof of loss.

20. That if the jury shall believe that the plaintiff furnished to the defendant the proof of loss which was sworn to before S. D. Williams and procured him to sign the certificate of such loss, without knowing the amount of the loss, the value of the property or other facts set forth in the certificate made by said Williams, or without having examined and read over the same before signing it; that said proof of loss was fraudulent and not such as required by the policy, and the jury must find these issues in favor of the defendant.

21. That the defendant was not bound to make an examination of the value of the property insured, and was in no default for not doing so.

22. That the defendant had a right to rely on the statements of the assured, as contained in her application, and was not bound

to make any further inquiry as to any of the matters contained in said application.

23. That the plaintiff had a right to read Borum's deposition to the jury. The omission of the defendant to read the deposition which might equally have been read by the plaintiff, is no ground for the presumption that the testimony of Borum would be unfavorable to the defendant.

24. That the jury cannot consider any of the evidence relating to the examination of the property insured, by an agent for the purpose of insurance prior to the date of this policy, as such evidence has no bearing in this case, and is withdrawn from the consideration of the jury.

25. That when application is made for insurance, at the same time and in the same application, upon two or more separate pieces of property, as upon the store and the goods therein; and the statements of the insured, contained in the said application, in reference to any one item of property, are false, the contract is regarded as entire, and the whole contract is void.

Counsel for the defendant in addition to the request made in writing, that the charge of the Court should be in writing, asked the Court, when the last of five speeches was being made to the jury, to put in writing also, any recapitulation of the testimony given to the jury, to show the application of the law to the testimony.

His Honor charged the jury, in writing, as follows :

"The plaintiff brings her action to recover upon a contract between the plaintiff and the defendant company, which contract is embodied in the application and policy issued thereon. The contract is mutual.

The answers of the plaintiff contained in the application, amount to a covenant on the part of the plaintiff that such answers (if material), being inducements to the defendant to enter into the contract, were true when the application was made. The defendant covenants to perform the stipulations contained in the policy, subject to the conditions set forth in the policy, but is not answer-

able to plaintiff in damages, unless the plaintiff has shown affirmatively that all the material representations contained in the application, and relied upon as inducements to contract, by defendant, were true when made.

The burden is upon the plaintiff to satisfy the jury by a preponderance of testimony:

1. That the defendant executed and issued to the plaintiff the policy set forth in the complaint. If the jury are so satisfied, their response to the first issue will be "Yes," otherwise, "No."

2. That the plaintiff's property covered by the policy sued on was destroyed by fire. If the jury are so satisfied they will respond to the second issue, "Yes," otherwise, "No."

3. What was the actual or estimated cost of the property insured, and that it was as great as the amount set forth in the application, viz., $1,700. If the actual or estimated cost of the property was less than $1,700, then the plaintiff cannot recover. In response to the third issue, the jury will write in letters or figures what they find from the testimony was the cost of the property insured.

4. That on October 3, 1879, when the application was made and also when the store-house was destroyed by fire, the value of each of the articles or items set forth in the application or policy was as great as the value fixed in the application and policy, viz.: That on the first of said days the store-house was worth $800; the general merchandise was worth $700; the counters, shelves, etc., in store-house were worth $100; the show case, scales, drawers and bed-room furniture in the store-house were worth $100.

In response to both of said issues the jury will write in letters or figures what they find from the testimony was the reasonable market value of articles as classified and set forth in the issues submitted. Upon the question as to the value of the property insured, at the time when the application was made and also when the store-house was destroyed by fire, the plaintiff relies upon her own testimony that the merchandise was worth accord-

ing to inventory, at cash price on September 29, 1879, $600, and that $200 worth of goods were added; that the other insured articles in the store were worth the amounts set forth in the application, viz.: ...... ..... ....... and ...... ..... ...... ; that the store-house was worth $800, and also upon the testimony of P. C. Dupree, who testified that as carpenter he did a portion of the work.

The defendant relies upon the testimony of the witnesses Ashley and Ellington, examined as experts, and a number of other witnesses who estimate the value of the building at $350 to $400, and the shelves, counters and show-case at less than the value set forth in the policy, and upon the testimony of a number of witnesses who estimate the value of the goods much lower than price fixed in the policy.

In determining the value of the property insured on October 3, 1879, the jury may consider and give such weight as they deem proper, to the testimony offered to show that the firm of Cameron, Hay & Co. were, during the years 1878 and 1879, agents both of the defendant company and the Virginia Fire and Marine Insurance Company, that issued the policy offered in evidence in July, 1878, and that an agent acting under the direction of said firm, inspected and estimated the value of the store-house and other articles insured in the policy sued on, at the prices set forth in the policy issued in 1878, and made out the application; that the relations of said firm with said agent were such that the said firm of Cameron, Hay & Co. could issue a policy in the name of either of the corporations without regard to the form of the application, and that the policy sued on was issued upon an application in form for insurance in said Virginia Fire and Marine Insurance Company. The witness may be considered as determining the value of the other articles insured, but not as to the value of the merchandise.

The burden is upon the plaintiff also to show in response to the seventh issue, what was the value of the property actually destroyed by fire.

The plaintiff insists that it was the amount set forth in the policy, less the value of the articles carried out of the store-house and saved. The defendant insists that the aggregate value of the articles was much smaller, and that the value of the articles saved should be deducted from the aggregate value ascertained by the jury.

The response to the sixth and ninth issues will be "yes" or "no," as the jury may find from the testimony.

In response to the tenth issue, if they shall find that the house had been previously insured, the jury will give the name of the person for whose benefit the store-house was insured. The only testimony on this subject was that of the plaintiff, that her son built the store-house on her land and by her permission, and afterwards took out a policy of insurance for his own benefit, and that the name of her son was W. E. Dupree.

In passing upon the eighth issue, if the jury are satisfied by a preponderance of testimony, that the plaintiff furnished to the defendant the proof of loss, which has been offered in evidence, within ninety days after the property insured was destroyed by fire, then the burden would be upon the defendant to show that the defendant demanded other proofs or in different form, and which were requisite to full compliance with the conditions of the policy. If such demands were made by defendant and the plaintiff did everything in her power to comply with the demand, and failed only to furnish some of her bills or her inventory destroyed by fire, the proof of loss offered in evidence would be deemed in law a compliance with the stipulations and conditions of the policy.

The court gave the first three and the twenty-first instructions asked by defendant, and stated that as the jury were called upon to find the facts so fully as to amount almost to a special verdict, much of the instruction asked by the defendant involved questions of law which might arise after the return of the verdict.

In their deliberations as to the sixth issue, the jury may consider the testimony of the witness as to actual value of the prop-

erty insured when the application was made, and also the testimony in reference to the inspection of the property by an agent in 1878, to which attention was called in connection with the fourth issue.

32D EXCEPTION.—The defendant excepted to His Honor's charge as given.

33D EXCEPTION.—The defendant also excepted to the failure and refusal of His Honor to give each of the instructions asked for.

At the conclusion of the evidence and before the argument was entered upon, the defendant's counsel presented a series of instructions, twenty-five in number, which the court was requested to give to the jury, and at the same time demanded that the instructions to be given should be in writing, adding thereto during the progress of the discussion a request that the recapitulation which might be made of the testimony should also be reduced to writing, to show the application of the law to it.

In this connection it may be remarked that the statute, *Code*, §414, only requires to be written and read to the jury, when demanded in apt time, so much of the charge as embodies a proposition or principle of law, which, if erroneous, admits of correction, but not the rehearsal of the testimony. He must " state in a plain and correct manner the evidence given in," and then, if required, " *declare* and explain the law arising thereon " in writing ; section 413.

This construction is put upon the statute and declared in *Currie* v. *Clark*, 90 N. C., 355, 359, 360.

The three first enumerated instructions, as also the 21st in the series offered by the defendant, were given, and these are put out of controversy.

The next two, numbered four and five, present questions of law and not of fact, and came within the observation of the Judge as matters to be decided after the findings of the fact to which the principle of law may be applicable ; moreover, all the misrepresentations relied on in the answer, as a discharge of the

28

defendant from the obligations of the contract, consist in an alleged over-valuation of the property, in the denial that the plaintiff had before suffered a loss by fire of a building upon the same premises, and added to this, her failure to furnish the particulars of the loss afterwards, when required. These defences are presented in distinct and independent issues to the jury, with directions to determine the separate value of each kind of insured property, at the time of insurance, and in like manner the actual or estimated cost of the property in the aggregate. This was done, and the verdict also fixed the separate value at the time of the fire. As the findings are adverse to the defendant and sustain the statements in the answer, no question as to their materiality can arise, and no cause of complaint found in the imputed omission to tell the jury that, in order to a recovery, all the answers to the inquiries contained in the application must be true in fact, irrespective of their materiality in inducing the issue of the policy.

The next seven instructions, from six to twelve inclusive, are predicated upon matters already considered, and require no further comment, except that which imposes the burden of showing the separate values upon the plaintiff, and in this the jury were so directed and they have so responded.

The 13th instruction asked, differs from that given and numbered three, only in that the former confines the inquiry to the aggregate *cost* of the property, while the other, following more nearly the words of the application, requires in detail the finding of "*the actual or estimated cost.*" There can be no just complaint of this.

The 14th instruction, follows and is dependent upon that immediately preceding, and the case shows there was evidence to warrant the response to the direction to find, if not the *actual*, the *estimated cost* of the property, and in this alternative form, the answer is given to the inquiry in the application.

The 15th instruction was properly refused, and the verdict removes the defence set up in the answer based upon an alleged insurance for, and a loss sustained by fire by the plaintiff.

The 16th instruction was given upon a broad and comprehensive issue, involving a compliance with all the requirements in respect to the proof of loss, and without a tedious rehearsal of the evidence upon this point, embracing a voluminous correspondence between the plaintiff's counsel and an adjuster of the defendant company, we are clearly of opinion that it warrants the charge of the court in respect to the eighth issue, and not less so the finding of the jury in the affirmative in response thereto.

The instructions, 17 to 20 inclusive, are rightfully refused.

The answer to the 22d instruction is found in the entire charge, which makes the liability of the defendant contingent upon the correctness of the declarations contained in the application, and thus assumes that the defendant might act upon them without further inquiry.

We cannot see the pertinency of the matter of the 23d instruction, nor what use in argument was made of the defendant's failure to read the deposition of its adjusting agent, nor indeed that anything occurred afterwards (for the instruction was asked before argument), which called for any direction of this sort during its progress. It seems not to have been noticed by the court, and we must assume the reasons for this, while not appearing, were sufficient.

The 24th instruction requires no further comment, and the 25th, which involves only matter of law, has become unimportant in consequence of the verdict.

Before dismissing the subject, it is proper to say, that the strict accuracy required in the application, to make the insurance contract binding on a company, is in the statement of facts, known or assumed to be known, and declared as such, not in the opinion formed and expressed as to the worth or value of property, and hence, an honest, though erroneous estimate put upon it, cannot be a vitiating element in the contract. It might be otherwise if intended to deceive and secure some unfair advantage from the company through its misplaced confidence, and, therefore, an issue was framed numbered 6 to present the imputed over-valuation

in this aspect, and the finding relieves the plaintiff of an intentional misrepresentation.

The cases cited in the brief of the defendant's counsel are in accord with this view. *Jeffries* v. *Life Insurance Co.*, 22 Wall., 47; *Ætna Life Ins. Co.* v. *France*, 91 U. S., 510; *Bobbitt* v. *Liv. and Lond. Globe Ins. Co.*, 66 N. C., 70, and a large number of other references in the brief.

After the rendition of the verdict, the same rulings, the exceptions to which have been reviewed, were assigned as grounds in support of a motion to set aside the verdict and award a *venire de novo*, and especially that there had been no evidence offered to sustain the findings upon the 3d, 4th, 5th, 6th, 7th, 8th and 10th issues.

This is but a renewal of previous exceptions, and we will only remark that the seventh must have been intended to refer to an issue of that number in a previous enumeration of the issues, and not to that passed on by the jury bearing the same number. This latter is only an inquiry as to the value of the property burned, about which there was much evidence.

The motion for judgment upon the verdict for the defendant finds no support therein.

The Judge who presided at the trial, and seems to have given a patient hearing to the argument in support of the long array of exceptions, and to have correctly administered the law in disposing of them, in explanation of the voluminous record sent up, says it was in deference to the demands of appellants' counsel, and while his notes do not show that the plaintiff testified, *seriatim*, that the store-house and articles therein covered by the policy were worth, separately, the sums at which they are valued in her application, yet the charge was written when his recollection was fresh, and was predicated upon her testimony as being such.    We must, therefore, accept the fact to be correct.

Upon a calm review of the case as presented in the appeal, we find no error which entitles the defendant to a reversal of the judgment, and it must be affirmed.

No error.                                        Affirmed.