CLEMENT B. DRAKE *vs.* HAMILTON WOOLEN COMPANY.

A mill owner is not liable under the mill act, Gen. Sts. *c.* 149, for any injury done to intervening land by letting down water from his reservoir dam for the use of his m'll, for which he would not be liable at common law.

If the owner of a mill and a reservoir dam on the same stream renders intermediate land wet and less valuable for cultivation, by letting down water from the dam in the dry season of the year, he is not liable in damages, if the water which he lets down is reasonably necessary for the use of his mill, and does not increase the volume of the stream beyond its usual limit, or overflow its natural channel; nor is liable in damages for flowage if the water which he lets down, and which, if unobstructed, would not flow the intermediate land, does flow it by filling a pond which is raised by the dam of another mill owner who has a right to flow it by that dam at all seasons of the year.

COMPLAINT under the mill act, Gen. Sts. *c.* 149; referred in the superior court, by agreement of the parties and under a rule of the court, to arbitrators, who returned an award in favor of the complainant, of which the following are the material parts :

" The complainant's land, for the injury to which he seeks compensation by this proceeding, is situated on the banks of a natural pond in the town of Holland, commonly known as Holland Pond. The Quinebaug River flows through this land, and empties into and passes through said pond. In the year 1865 the respondents erected a dam across said river, above the complainant's land, for the purpose of creating a reservoir, from which, in the dry season, they may supply their mills, which are situated on said river in the town of Southbridge in the county of Worcester. The respondents began to use said dam by sending down water therefrom in July 1866, and at this time there had existed for many years a mill dam across said river, below said pond, and below the complainant's land, known as the East Brimfield dam, which had been accustomed to set back the water of said stream, during the time of high water, upon said pond, and to some extent upon the complainant's said lands, the water overflowing said land during some part of the year to an extent which, if continued through the dry season of summer, would be more than sufficient to cause all the injury complained of. This dam had existed for more than twenty years, and

Elbridge G. Fuller, the former owner of the complainant's land, and the immediate grantor of the complainant, had formerly instituted a complaint against the owner of said dam, and recovered an annual compensation, and on June 1, 1848, conveyed to Ezra Perry, Jr., the then owner of said dam, the right to flow said land by said dam, at its height at that time, which has not since been increased. The complainant objected to the introduction of said deed; but the objection was overruled, and the deed admitted." The grant in this deed was to said Perry, his heirs and assigns, forever, of " the right, title and privilege to flood and to flow at all seasons of the year all the land that I own in Holland aforesaid that can be flowed by the water above the dam of said Perry at his manufactory in Brimfield, with a dam in the same place and of the same height of the present dam taken at its general level as it is now constructed; and the said Perry, his heirs and assigns, are to have full power to flow the same as above without any claim or demand for damage from me, my heirs and assigns, forever."

" When the dry season of summer comes on, and the water commonly flowing in the river is insufficient for the use of the respondents' mills, they open the gates of their reservoir dam, and send down into the channel of the river such a quantity of water as is reasonably necessary for the beneficial operation of their said mills. The quantity of water so let down from said reservoir is not larger than is accustomed to flow in some seasons of the year, but is very much larger than the accustomed flow of the stream in such dry season; and the result is, that the channel is more uniformly full of water through the year. The natural channel immediately below the respondents' dam, and above the complainant's land, is sufficient to carry all the water which the respondents send down from their reservoir; and, although the banks are lower, and the fall less rapid below said land, if it were not for the East Brimfield dam, such water would pass off into Holland Pond, and through the river below said pond, without injury to the complainant. But in the existing condition of Holland Pond, and the river below the same, and of the East Brimfield dam, the water so let down by the

respondents in the dry season does in fact spread out over the complainant's land, spoiling his grass and deteriorating and diminishing the value of his land.

" Before the erection of the respondents' reservoir, reservoir dams had been in existence since 1828, and still continue to exist above the complainant's land and above the respondents' reservoir, which had been accustomed to discharge their waters during the summer season in a similar manner to that above described, and producing an effect of the same kind, but to much less extent, upon the complainant's land.

" The respondents contended that, under the state of facts disclosed by the case, the arbitrators should be governed by rules and principles of law stated as follows :

" ' The respondents are not liable under mill acts for damages for any acts which they had a right to do, as landowners, at common law.

" ' The right of the complainant, as owner of land bordering on a natural stream, is not an absolute right to have the water flow upon his premises in its natural manner, but to receive it subject to and affected by such reasonable uses as owners above may have occasion to make of it.

" ' If the water passes through the land of the owner below in its natural channel, the upper owner is not liable if he detains it for the purpose of a reasonable use for his mill, even if he sends it down in a mode different from its natural flow, so that the channel is kept more uniformly filled with water through the year, and so that in the summer months the adjacent meadows of the lower owner are not so thoroughly drained, and the water percolates them during the summer from the stream under the earth, and thereby an inferior quality or smaller quantity of grass is produced.

" ' When, in the case above supposed, the land of the lower owner is flowed by a dam rightfully erected still further below for which flowing through the entire year damages have been assessed and paid, or by the discharge over it of water from reservoirs above, which discharge is shown to be rightful, either by prescription or by the mill acts; such flowing is to be taken, for

the purpose of applying the foregoing principle, as the natural condition of the stream, and the builders of a new reservoir above are not liable for damage, if in making such reasonable and proper use of the water as is requisite for their own mills they send it down more uniformly through the year than it otherwise would pass, provided they do not cause it to rise above the limits to which it was before accustomed, and do not send down more water than enough to fill the natural channel, even if it is thereby kept up to its ordinary limit for a longer time and the consequences above stated follow.

" ' If they have used their reservoir in a manner reasonably necessary for the purposes of their mill, and have done nothing wantonly to injure the complainant, and have sent down the water from their reservoir in the natural channel only, they are not liable, although the water is so sent down during the summer months, when before there was less water in the stream.

" ' If the complainant or those under whom he claims had conveyed to a mill owner below the right to flow his land and obstruct the natural and usual discharge of the water therefrom, and such right was in fact exercised, the respondents are not liable if they send down no more water than the channel of the stream, if not so obstructed, would carry off, even though the water so sent down in fact sets up over the complainant's land.

" ' The principle above stated would be true, if the right to flow below had been taken by a complainant under the mill acts.

" ' The efficient force of the Brimfield dam is to be considered as raising the water to the height to which it would carry it at its ordinary stages, although in dry seasons it was in fact accustomed to fall below such height; and, in considering the value of the complainant's land for the purpose of estimating his damages, it must be considered as subject to the incumbrance of a vested right in the owners below to raise the water at all seasons of the year to the height to which the Brimfield dam would raise it.'

" The arbitrators, having found the facts of the case to be as hereinbefore stated, declined to adopt the view of the respond-

ents to the extent above expressed, but held the rules and principles applicable in the determination of the case to be as fol'ows :

" The several rights to flow the complainant's land, vested in the proprietors of the East Brimfield dam by grant, and in the proprietors of the reservoirs above the respondents' reservoir by prescription or by virtue of the mill acts, are incumbrances upon the complainant's land, and to be taken into account by the arbitrators in determining the value of said land and the amount of damages sustained.

" The respondents have a right to construct their dam and reservoir under the provisions of the mill acts, but, in determining the question of their legal liability for any injury caused to the complainant by the operation of the same, regard must be had to the actual, existing condition of the pond and river below said reservoir at the time and before said reservoir was created ; and if the respondents, in operating said reservoir by sending down water therefrom, do in fact overflow and injure the complainant's land, they are liable for such injury in this proceeding, although they may send down no more water than the stream, if not obstructed by the East Brimfield dam, would carry off without injury to the complainant's land, and no more than is reasonably necessary for the beneficial operation of their mills, and although the former owner of the complainant's land has granted to the proprietors of the East Brimfield dam the right to flow said land to the extent and under the circumstances before stated.

" In determining the amount of damages sustained by the complainant to the date of their award, the arbitrators will be governed by the actual facts of the case as disclosed by the evidence, and allow for the excess of injury caused to the complainant's land by the operation of the respondents' dam and reservoir over and above any injury caused to said land by the combined operation of the East Brimfield dam and the ancient reservoirs above the reservoir of the respondents.

" In determining the amount of the complainant's future annual damages, and the damages in gross, the arbitrators will

endeavor to ascertain and determine, taking into consideration the character, capacity and condition of the stream, the situation and condition of the complainant's land, and the right to flow acquired by the proprietors of the East Brimfield dam and of the ancient reservoirs, to what extent the land of the complainant will be injuriously affected by the exercise of such existing rights and by other causes independent of said dam and reservoir of the respondents, and allow to the complainant such damages only as in their opinion will be a just and reasonable compensation for such additional injuries as will result to the complainant's land by means of said dam and reservoir."

The respondents objected to the acceptance of the award; and asked for rulings that the rules of law adopted by the arbitrators were incorrect; that the rules should have been applied which were requested; and that on the facts found and reported by the arbitrators the respondents were entitled to judgment. This *Devens*, J., refused, and ordered the acceptance of the award and judgment for the complainant. The respondents alleged exceptions.

*G. F. Hoar & A. J. Bartholomew*, for the respondents.

*H. Morris*, for the complainant.

CHAPMAN, C. J.    This case depends principally upon the rights of the parties at common law.    The rights of riparian proprietors to vary the natural flow of a stream in order to use it most advantageously for the working of mills was thoroughly considered in the case of *Gould* v. *Boston Duck Co.* 13 Gray, 442.    In that case the plaintiff was proprietor of an ancient mill.    The defendants had, within twenty years, built a factory a short distance above the plaintiff's mill, and erected a dam across the stream, by means of which they raised a large pond. Their works did not, in ordinary stages of the water, affect the plaintiff's mill ; but the size of their factory was adapted to the usual flow of the stream ; and therefore it happened that in times of very low water it required more power than they could derive from the natural flow to drive their machinery.    In the latter part of the day their pond was drawn down considerably below the top of the dam, and they ceased to have a sufficient head

They then shut their gates, and stopped the flow of the water till their pond became full. When they hoisted their gates the next morning, they let down, for the purpose of carrying their works, a much larger quantity of water than the plaintiff could use at his smaller mill. It was held that a riparian proprietor might thus disturb and vary the natural flow of a stream, for the purpose of driving machinery, notwithstanding its injurious effect upon an ancient mill below him. The right is founded upon the consideration that water power is property of great value, and that a large part of the power must run to waste if mills may not be constructed sufficiently large to use all the power of the stream at its ordinary height; and, if mills of such a character may be constructed, it is but reasonable that the proprietor should have a right to husband the power in seasons of extraordinary drought, so that he may use it most advantageously, and not be compelled to let his machinery and workmen remain entirely idle till the stream may be raised by rains. It is a reasonable use of his right with reference to the proprietors below him. If they use the whole power of the stream, it benefits them equally with himself. It is only when they allow a part of their power to run to waste in ordinary stages of the water that they are injured by such use; and the injury to them is comparatively trifling. This interpretation of the rights of riparian proprietors tends to promote the interests of the public, because it enables the owners of water power, which has proved to be a species of property of great value to the public, to avail themselves of it to the utmost extent that can be deemed reasonable.

It is obvious that this exercise of the right to vary the natural flow of the stream not only affects the mill owner immediately below, but affects the stream for a considerable distance, at some times increasing its volume, and at other times diminishing it. And the proprietor may make his pond as large as the situation of the land above him will permit, thereby creating a large reservoir to be used in seasons of drought, and varying the flow of the stream. He may also erect a dam far above his mill, to be used merely as a reservoir dam. He is authorized by our stat-

utes to flow the land above such dam on payment of damages. *Wolcott Manufacturing Co.* v. *Upham*, 5 Pick. 292. *Shaw* v. *Wells*, 5 Cush. 538. By means of such a dam he may hold back the water in his reservoir till he needs it for his works in a season of drought, and then let it down in such quantities as considerably to increase the volume of the stream. Such reservoir dams are becoming more important than they formerly were, because the clearing, cultivation and drainage of marshy and swampy grounds is gradually destroying the natural reservoirs which formerly supplied more or less water to most of our streams through the whole year. The principal question raised in the present case is, to what extent a riparian proprietor, who has erected a reservoir dam for the benefit of his mill situated at a distance of several miles below, may so let down the water in seasons of drought as to increase the volume of the stream, without exceeding his rights as such proprietor, and becoming liable to pay damages to intermediate proprietors for the interruption it may occasion to the drainage of their lands. The court are of opinion that it is not an unreasonable exercise of his rights to increase the volume of the stream to any extent that shall not exceed the usual and ordinary flow, nor overflow the natural banks. This will enable the proprietors of mills to avail themselves of all the power which a reasonable use of the stream affords, and will subject the proprietors of the lands that border on the stream to no unreasonable burden.

In the present case it does not appear that, if the natural channel had been left unobstructed below the complainant's land, any injury would have been done to him. On the contrary, it is found that the water which came from the respondents' reservoir dam would pass off within the natural banks. But Mr. Fuller, the former proprietor of the complainant's land executed a deed to Ezra Perry, Jr., conveying to him, his heirs and assigns forever, the right, title and privilege to flood and flow, at all seasons of the year, all the land he owned in Holland, that could be flowed by a certain dam, and describing the dam that has ever since existed below the complainant's land. This is a right to flow the land by means of any water that any

party would have a right at common law to send down the stream. It is by means of this dam that the stream is raised above its natural banks so as to overflow the complainant's meadow in the manner described in the complaint. But for this artificial structure, which has been erected under a right derived from the complainant's grantor, the water would have passed off in the natural channel. The acts of the respondents are not therefore the direct cause of the injury complained of. They would not cause the water to overflow the banks; but the structure below raises it up and causes it to spread over the meadow. The respondents have merely exercised their riparian rights; and, upon the facts found by the referees, the complainant has no cause of action. *Exceptions sustained.*