John Baldwin *et al.* v. Ohio Township *et al.*
No. 13,537.    (78 Pac. 424.)

SYLLABUS BY THE COURT.

1. SURFACE-WATERS — *Right to Drain into a Natural Watercourse.* The owner of lands through which a natural watercourse flows may accumulate surface-waters falling upon lands adjacent thereto and drain the same into such stream without becoming liable to a lower riparian owner for damages, so long as the natural capacity of the stream is not exceeded.

2. —— *No Liability for Incidental Injuries, or Where Capacity of Natural Stream is Not Exceeded.* An upper proprietor of lands is not liable to a lower proprietor for damages caused by diverting surface-water and casting it into a natural watercourse passing through both estates, where such diversion is occasioned by the improvement of the upper estate, in good faith, and where the injury is incidental, small, or not occasioned by the stream's natural carrying capacity's being exceeded.

3. —— *Road-overseer — Highway — Drainage — Damages.* A road-overseer, in good faith, made a substantial improvement to a highway by grading it and cutting a ditch along its side, whereby surface-waters were gathered and drained into a natural watercourse flowing across such highway, to the damage of a lower riparian proprietor. *Held,* that such proprietor could not recover damages, or enjoin the maintenance of such ditch, it not appearing that such damages were occasioned by the overflow of such stream by reason of the increased flow of water therein.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed November 5, 1904. Affirmed.

*Gamble & Costigan,* for plaintiffs in error.
*Deford & Deford,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Plaintiffs' action was for the purpose of obtaining damages for injuries suffered by the alleged illegal diversion of surface-water thrown upon

Baldwin v. Ohio Township.

their land by defendants, and for a mandatory injunction restraining the further continuance of such injuries.

The case is before us upon a transcript containing only the pleadings, the findings of fact made by the trial judge, the conclusions of law, and the judgment. As to the facts we have no light, except what is disclosed by these findings. From them we ascertain that the plaintiffs were, and had been for several years prior to the commission of the wrongs of which they complained, the owners of certain land, which they used and occupied as their homestead, lying south of a public highway extending east and west along its north boundary. During this time there was a natural watercourse entering the plaintiffs' land on its north side and extending in a southerly direction nearly the full length of the land. This natural watercourse is spoken of as the "west draw," and drains an area of about thirty-eight acres on the north side of the highway. About thirty-five rods east of the point where this west draw crosses the highway is a surface-water drain, and about twenty-seven rods still farther east is another surface-water drain. These two drain an area of forty-eight acres, and are known as the "middle" and "east" draws, respectively.

At the time the plaintiffs became the owners of the land occupied by them as aforesaid, and for some time prior thereto, culverts were maintained across the middle and east draws at the point where the highway intersected them. These culverts were of small dimensions, being eight by twelve inches on the inside. There was also a bridge across the highway at the point where the west draw intersected it. We presume that ordinarily the surface-waters coming down the middle and east draws passed through their re-

spective culverts and over and upon the plaintiffs' lands to the south in no defined channels, except that their general course was south and east. These waters finally flowed into what is spoken of as Middle creek. The natural watercourse known as the west draw fell into Middle creek some distance west of the point where the middle and east draws joined it.

In 1895 one John Blocklinger, who was then the duly elected, qualified and acting road-overseer of the road district in which this highway was located, for the purpose of improving the same, caused it to be graded up and a ditch dug along its entire north side, emptying into the west draw at its west end. He also removed the culverts which had theretofore intersected the highway at the middle and east draws. The effect of this was to collect all of the surface-water which had theretofore passed down through these draws into this ditch, by means of which the water was carried westward and emptied into the west draw, thereby increasing the volume of water therein. It is of this increase of volume, and the damage caused to them thereby, that the plaintiffs complain.

The court specifically found that "the digging of said ditch, the closing up and removal of said culverts and the grading of said highway were a substantial improvement to the highway, and were done in good faith, with no other intention than to improve it"; and further, that "the water carried along said ditch on the north side of said highway and emptied into said west draw flows in and upon the plaintiffs' farm, to their injury." The court also found that "had said ditch along the north side of said highway not been constructed, the waters accumulating in said middle and east draws could not have gotten into said west draw nor onto the land of plaintiffs,

and this would be true even though the culverts at the intersection of said middle and east draws with the highway were removed"; that "the plaintiffs have suffered damages to their said farm by reason of the said surface-water's being collected from said middle and east draws into said ditch and cast in a body upon their said farm"; and that "they will continue so to suffer damages from said cause so long as said ditch is permitted to remain as it was when said action was begun and as it now is."

As a conclusion of law, the court held as follows :

"The surface-water having been accumulated in an artificial ditch, and cast in a body upon the land of Mr. Baldwin, the defendants would be enjoined were it not for the fact that it was cast upon the farm of the plaintiffs by means of a natural watercourse."

Thereupon judgment was rendered against plaintiffs for costs, and to reverse that judgment plaintiffs appeal to this court.

Several reasons other than the one given by the court are urged by defendants in error for the affirmation of this judgment. We prefer, however, not to give these reasons attention, but to discuss the matter entirely from the standpoint taken by the court below. We shall assume that the party responsible for the making of the ditch and the improvement of the highway, whether such party was the township, township officers, or the road-overseer, occupied the same relation to the plaintiffs as would a private owner, and that they had a right to dispose of surface-water coming upon the highway in the same manner, and to the same extent, as would the private owner of a dominant adjoining estate. In *Young v. Comm'rs of Highways,* 134 Ill. 569, 25 N. E. 689, the court said :

"The commissioners of highways, where they undertake to drain a public highway, possess the same

rights and are governed by the same rules as adjoining landowners who may undertake to drain their own lands, except where they may be proceeding under the eminent-domain laws of the state.''

The common-law rules regulating the rights and duties of adjoining owners of lands relative to surface-water obtain in this state.   (*A. T. & S. F. Rld. Co. v. Hammer*, 22 Kan. 763, 31 Am. Rep. 216 ; *Gibbs v. Williams*, 25 id. 214, 37 Am. Rep. 241.)   Under those rules it is well settled that the owner of the upper estate may not gather surface-water falling or accumulating thereon, and by means of artificial channels divert it from its natural course and discharge it upon the lower estate, to the damage of the owner thereof.   This rule, however, goes hand in hand with the equally well-settled doctrine that, as to such waters, either owner may stand upon the defensive.

The owner of lands through which a natural watercourse flows may, however, accumulate and cast into such watercourse in a body the surface-water falling upon lands adjacent thereto.   Such streams are the drains provided by nature for the discharge of surface-water gathered by natural forces and the general contour of the lands.   The rule is thus stated in Farnham on Waters and Water Rights, section 186 :

''The force of gravity which causes all waters flowing on the earth to seek the lowest level creates natural drainage, and provides for the distribution of all water, whether surface-water or otherwise.   This natural drainage is necessary to render the land fit for the use of man.   The streams are the great natural sewers through which the surface-water escapes to the sea, and the depressions in the land are the drains leading to the streams.   These natural drains are ordained by nature to be used, and so long as they are used without exceeding their natural capacity the owner of land through which they run cannot com-

plain that the water is made to flow in them faster than it does in a state of nature.  Among the steps which are taken for the improvement of property, one of the first is to remove the water from it as rapidly as possible.   The right to drain upon and over lower lands without making compensation for such privilege is the same whether the higher land is the farm of an individual owner or is a public highway ; and high-way commissioners have the right to have the surface-water, falling or coming naturally upon the highway, drain through the natural and usual channel upon and over lower lands ; and have the right to construct ditches or drains for the purpose of conducting such surface-water, even though it is accumulated in ponds, into such natural and usual channels, although the effect may be to increase the volume of water thus carried upon lower lands.   In accordance with this principle the flow of the water into the natural streams may be hastened so long as the water is not caused to overflow the banks of the stream to the injury of the land through which it flows ''

In Gould on Waters, section 274, the same rule is stated as follows :

''The owner of land has a right to discharge the natural drainage of his land, and the surface-water accumulating thereon, into a watercourse, whereby it becomes a part thereof, and in so doing he may change or concentrate its flow in artificial channels, thus ac-celerating the flow and increasing the volume of water in the stream, provided its natural capacity is not exceeded, and those whose supply is rendered more variable cannot complain.''

It is said at page 733 of volume 85, American State Reports, in a note to the case of *Mizell v. McGowan*, 129 N. C. 93 :

''We have just noticed the difference between merely draining onto another's land, and draining into a natural. channel or watercourse which flows across such land.   So far as streams or natural water-

courses are concerned, there can be no doubt that one
may drain into them, and thereby increase their vol-
ume, without subjecting himself to liability for any
damage suffered by a lower owner.'' (*Miller v. Lau-
bach*, 47 Pa. St. 154, 86 Am. Dec. 521; *Cairo and Vin-
cennes Railroad Company v. Stevens*, 73 Ind. 278, 38
Am. Rep. 139; *Treat v. Bates*, 27 Mich. 390; *Jackman
v. Arlington Mills*, 137 Mass. 277; *Waffle v. New York
Central R. R. Co.*, 53 N. Y. 11, 13 Am. Rep. 467; *Mc-
Cormick v. Horan*, 81 id. 86, 37 Am. Rep. 479;
*Jenki s v. Railroad*, 110 N. C. 438, 15 S. E. 193; *Peck
et al. v. Harrington*, 109 Ill. 611, 50 Am. Rep. 627;
*Pennsylvania Coal Co. v. Sanderson*, 113 Pa. St. 126,
6 Atl. 453, 57 Am. Rep. 447; *Rath v. Zembleman*, 49
Neb. 351, 68 N. W. 488.)

From a careful study of these and other cases we
are not disposed to indorse the broad doctrine an-
nounced in the text of the note, or to hold that in no
case may the lower riparian proprietor recover dam-
ages for injuries inflicted by diverting surface-water
into a natural watercourse by an upper riparian owner;
but we are disposed to hold that such owner may not
gather and divert surface-water from its natural course
of flowage and cast it into a natural watercourse, to
the serious damage of the owner of the lower estate
by overflow. In order that there may be a recovery
for such damages, or their continuance enjoined, they
must, however, be of a serious and sensible nature.
It is quite obvious that the rule, as against the domi-
nant proprietor, cannot be enforced in its minutest
detail and for its minutest infraction. To say that
no surface-water may be diverted and cast into a nat-
ural stream is practically to prohibit the removal or
shifting of any of the soil from its natural condition.
Such a strict application would result in preventing
the processes of agriculture and of other necessary im-
provement.

In speaking upon another phase of this question, but with equal applicability to this, this court, in *Gibbs v. Williams, supra,* said (at page 216) :

"If the right to run in its natural channels was annexed to surface-water as a legal incident, the difficulties would be infinite indeed.   Unless the land should be left idle, it would be impossible to enforce the right in its rigor ; for it is obvious every house that is built, and every furrow that is made in a field, is a disturbance of such right.   If such a doctrine prevailed, every acclivity would be and remain a watershed, and most low ground become reservoirs.   It is certain that any other doctrine but that which the law has adopted would be altogether impracticable."

So the law must, and does, recognize the right of the dominant owner to divert, at least incidentally, for a proper purpose and in good faith, the flow of surface-water from its natural course, especially when it is cast into a natural watercourse, and where but little damage is occasioned.   Were this not so, improvements of the land for the purposes of agriculture, road-making and other betterments would be seriously hampered and impeded.   Again, it clearly appears from the authorities that not all damages suffered by the owner of the lower estate may be recovered, or the continuance thereof enjoined, but only such damages as result from the overflowing of the stream because its natural capacity has been exceeded.   The fact that the flow has been accelerated, or deepened, or that the banks of the stream have been washed away in places and sand-bars created at other points, is something for which it is not within the purview of the law to grant relief.

Upon this point it is said, in Farnham on Waters and Water Rights, section 488 :

"Drainage being necessary to fit the land for suc-

cessful occupation, and the streams being the natural channels of drainage, the flow of the surface-water may be hastened into the streams so far as it can be done without flooding lower property.''

See, also, cases cited above, and *Drake v. Hamilton. Woolen Company*, 99 Mass. 574; *Hayes v. Waldron*, 44 N. H. 580, 84 Am. Dec. 105; *Rutherford v. The Village of Holly*, 105 N. Y. 632, 11 N. E. 818.

In *Kemper et al. v. The Widows' Home et al.*, 6 Ohio Dec. 1049 [reprint, 9 Am. Law Rec. 732] it was said :

''Merely increasing the flow of water in a natural watercourse does not, like increasing the flow of surface-water, give a right of action. Riparian owners. cannot complain when such increase is due to the building or change of grade of streets and the improvement of lots fairly within territory drained by such watercourse, when its capacity is not exceeded.''

The plaintiffs have argued this case as though the finding of the court was that the damage suffered by them was occasioned by the flooding of their lands. caused by the overflow of this natural watercourse. Such, however, is not the case. While the court found that the plaintiffs were damaged, it did not find that such damage was consequent upon the overflow of this natural watercourse ; and, as it found that they were not entitled to recover, we must presume that. the damage suffered was such, and only such, as they could not recover for under the law.

Because it here affirmatively appears that the improvements that were made upon the highway were of a substantial character, and made in good faith, and because it does not appear that the diversion of the surface-water occasioned thereby from the middle. and east draws was more than a mere incident to the making of such substantial improvements, and because it does not appear that the damage suffered by the

plaintiffs was occasioned by the overflow of the natural watercourse into which such surface-water was turned, or that such damage was other than what was occasioned by the hastening or increasing of the flow, we conclude that the same was *damnum absque injuria*, and, hence, no recovery can be allowed.

The judgment of the lower court is affirmed.

All the Justices concurring.