## Frank C. Barker *vs.* Lester S. French.

### Penobscot.    Opinion February 15, 1907.

*Waters and Water Courses. "Mill Act." Dams. Rights and duties of dam owner. Overflowing land below dam. Damnum Absque Injuria.*

The case at bar was an action on the case in which the plaintiff sought to recover compensation for the loss and damage sustained by him, because, as he alleged, the defendant opened the gates of his mill dam across Kenduskeag Stream, and wrongfully discharged upon the plaintiff's meadow below, an unnatural and largely increased body of water which he had collected in his mill pond by means of the dam and flush boards. The plaintiff excepted to all the rulings made by the presiding Justice in his charge to the jury.

There was no averment in the plaintiff's declaration and no suggestion of evidence tending to prove that the defendant's mill dam and mills were not adapted in magnitude to the size and capacity of the stream and the quantity of water usually flowing in it. The instructions to the jury must therefore be presumed to have been given upon the assumption that the defendant's works were adapted in size to the usual flow of the stream.

With reference to the issue raised by the pleadings, the instruction was, that the defendant " could only maintain a head of water for the use of his mill, only let it out at such times and in such quantities as were proper and reasonable for the use of his mill. He could not hold water back when he had no use for it and there was no need of it . . . . and if he had occasion to use his mill, he could not turn out more water than was reasonably necessary and proper for the reasonable use of his mill. He must so far have regard for the rights and interest of those below him but within his right to operate his mill, he could exercise his rights and if those below were injured that was their misfortune in owning land below the mill." *Held:* that there was no error in the instructions.

The mill act of Maine does not authorize a complaint for flowing lands below a dam, and hence in an action at common law to recover damages alleged to have been caused by a defendant wrongfully increasing the volume of a stream so as to overflow a plaintiff's land below a dam, the question whether or not there was an unreasonable exercise of such defendant's rights is a question of fact for the determination of a jury under proper instructions.

On exceptions by plaintiff.    Overruled.

Action on the case in which the plaintiff sought to recover for loss and damage sustained by him and alleged to have been caused by the defendant opening the gates of his mill dam across the Kenduskeag Stream and wrongfully discharging upon the plaintiff's meadow below the dam an unnatural and largely increased volume of water which the defendant had collected in his mill pond by means of the dam and flush boards.

Tried at the January term, 1906, of the Supreme Judicial Court, Penobscot County. It is assumed that the verdict was for the defendant although the case as sent to the Law Court is silent on that point. The plaintiff excepted to all the rulings made by the presiding Justice in his charge to the jury.

The case appears in the opinion.

*Thomas W. Vose,* for plaintiff.

*P. A. Smith,* for defendant.

SITTING :    WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

WHITEHOUSE, J.    This is an action on the case in which the plaintiff seeks to recover compensation for the loss and damage sustained by him, because, as he alleges, the defendant opened the gates

of his mill dam across Kenduskeag Stream, and wrongfully discharged upon the plaintiff's meadow below, an unnatural and largely increased body of water which he had collected in his mill pond by means of the dam and flush boards.

There was evidence tending to prove that the owners of the mill and dam prior to the occupation of this defendant, annually, on or before the twentieth day of May removed the flush boards on the dam and suspended the operation of the mill until the grass on the plaintiff's meadow was cut and housed.

There was, also, evidence tending to prove that at times during the months alleged in the declaration the water from the defendant's mill, while in use by him for the purpose for which it was built, so increased the flow of water in the stream that it overflowed its banks and flooded the plaintiff's meadow, thereby greatly reducing the quality and quantity of grass thereon, and so softened the soil of the meadow that it became very difficult and in some places impossible, to secure whatever crop of grass did grow there. There was also evidence to the contrary.

The presiding Justice instructed the jury as follows:

"The defendant is the owner of a dam and mill on the Kenduskeag Stream in Exeter. By the law of this State, he has a right to maintain on that stream a dam on his own land and with that dam raise a head of water for operating his mill on that dam. The plaintiff is the owner of a meadow on that same stream, below that dam one-half or three quarters of a mile, I think. The plaintiff has a right to have the water of that stream flow by his meadow according to its natural course and natural amount, except so far as modified by the right of the defendant in his mill above. The State has the power to give the defendant, Mr. French, certain rights which are superior, perhaps, to the rights of the plaintiff. Now Mr. French, the owner of the mill, by the law of this State had a right, in the prosecution of his business, to maintain a dam to raise a head of water sufficient to propel the machinery of his mill. He had a right to let that water out at such times in the year, at such times in the day, and in such quantities, as would be reasonably necessary for the proper and efficient working of his mill to transact his business as a manu-

facturer in that mill ; and the owner of lands below own their lands and enjoy them subject to that right of the mill owner above. So if, in the prosecution of his own rights, the mill owner lets water down at various times and various seasons and in various quantities, within his rights, and, by reason of the time of letting down or the quantity of letting down, the property of the riparian owner below is injured, then the latter must bear it. That is the law of this State. The defendant, Mr. French, therefore, could maintain his dam, and he could maintain flush boards, if reasonably necessary to raise a head of water for the proper working of his mill ; and by "proper" I mean the efficient working of his mill. Having raised his head of water, he could then use it in the prosecution of his business, and at such times, winter or summer, spring or autumn, freshet or drought, as would be reasonably necessary for the proper transaction of his business. He was entitled by law to carry on his mill business and to manufacture as the material came to him to manufacture. But he could only maintain a head of water for the use of his mill, only let out at such times and in such quantities as were proper and reasonable for the use of his mill. He could not hold water back when he had no use for it and there was no need of it. He could not turn it out at his whim when he had no occasion to use his head of water ; he could not turn it out wantonly. He could not turn it out simply to get rid of it, in such quantities as to be injurious ; and, indeed if he had occasion to use his mill, he could not turn out more water than was reasonably necessary and proper for the reasonable use of his mill. He must so far have regard for the rights and interest of those below him, but within his rights to operate his mill, he could exercise his rights, and if those below were injured, that was their misfortune in owning land below the mill. Whoever owns land upon the bank of a river or stream does so subject to the rights of men building mills above."

" To all of which rulings, the plaintiff excepts and prays that his exceptions may be allowed."

It will be seen that the bill of exceptions upon which this case comes to the Law Court fails to distinguish in any manner whatever the several propositions of law stated in the charge. It is therefore

clearly amenable to the disapproval visited upon this method of tak-
ing exceptions in the opinion of this court in *McKown* v. *Powers*,
86 Maine, 291. Under the rule of practice "authoritively declared"
in that case, the court would not be required to consider exceptions
presented in this objectionable manner, but inasmuch as the bill
appears to have been allowed by the presiding Justice without objec-
tion or qualification the case has been carefully examined in the light
of the arguments of counsel and the attention of the court has not been
called to the statement of any proposition of law in the charge
respecting the rights of riparian owners under the circumstances dis-
closed, which is not in harmony with the established principles of
the common law, as modified by legislative enactments in regard to
the erection and maintenance of mills and mill dams. The rule
there given to the jury has been approved by a substantially uniform
current of authority in all jurisdictions having statutes similar to
our mill act, and no case has been cited by counsel in which an essen-
tially different rule has been adopted. The same doctrine has been
repeatedly announced by the court in Massachusetts, and in several
analogous cases in our own State.

It should be noticed in limine that there is no averment in the
plaintiff's declaration and no suggestion of evidence tending to prove
that the defendant's mill dam and mills were not adapted in magnitude
to the size and capacity of the stream and the quantity of water
usually flowing in it. The instructions to the jury must therefore
be presumed to have been given upon the assumption that the defend-
ant's works were adapted in size to the usual flow of the stream ; and
with reference to the issue raised by the pleadings, the instruction
was, that the defendant "could only maintain a head of water
for the use of his mill, only let it out at such times and in such
quantities as were proper and reasonable for the use of his mill.
He could not hold water back when he had no use for it and there
was no need of it; . . . and if he had occasion to use his mill,
he could not turn out more water than was reasonably necessary and
proper for the reasonable use of his mill. He must so far have
regard for the rights and interest of those below him but within his
right to operate his mill, he could exercise his rights and if those

below were injured that was their misfortune in owning land below the mill."

This was undoubtedly correct. In *Gould* v. *Boston Duck Company*, 13 Gray, 442, Shaw, C. J., says: "By the rule that all ·proprietors of land through which a water course passes have an equal right to the use of the power of the stream for mill purposes, it is not to be understood that each or any one has a right to the natural flow of the stream in the manner in which it ran originally, or as it would run if no mill were erected on it, or to be worked by it; in its mere natural flow, it affords no power. Dams must be made to raise it, and canals and sluices to conduct, apply and discharge it. The right to erect these works, and to change the natural mode of the flow of the current, is incident to the right of applying it to the working of mills, and this right therefore is common to every riparian proprietor. Each therefore must exercise his own reasonable right with a just regard to the like reasonable use by all others. The mere erection of a dam and the use of the water in driving wheels, must necessarily derange its steady and constant natural flow, and substitute a different manner, as to the time and mode of holding it up and letting it down. So far as such mode is reasonably incidental to the use of the stream for mill purposes, it is the right of the proprietor, and constitutes, in part, the mill privilege which the law gives him." See also *Drake* v. *Hamilton Woolen Co.*, 99 Mass. 574.

In *Brooks* v. *Cedar Brook Improvement Co.*, 82 Maine, 17, it was held that where a dam, erected in accordance with legislative authority upon a non-tidal public stream to facilitate the driving of logs, caused an increased flow of water at times in the channel below, thereby widening and deepening the channel and wearing away more or less, the soil of a lower riparian owner, it is not such a taking of property as entitled the owner to compensation, but a case of damnum absque injuria.

In *Durham* v. *Fibre Co.*, 100 Maine, 238, it appears that the dam in question was reasonably and properly located and rightfully constructed by the defendant company on its own land in accordance with the express authority of the statute for the purpose of propel-

ling a mill, and the question presented for the decision of the court was whether the plaintiffs were entitled to compensation for an injury to the highway below the dam resulting at freshet seasons from an increase in the volume, momentum and velocity of the water, and in the incidental pressure against the Durham shore, occasioned by the defendants' works. It was there held also that the damage sustained by the plaintiffs was a loss in fact without a wrong in law, the damnum absque injuria of the common law. See also A. & E. Encyc. of Law, Vol. 30, p. 378, and Farnham on Waters and Water Rights, Vol. 1, p. 1615, and Vol. 3, p. 2150.

It must be remembered that the case at bar is not a complaint for flowage under the statute. The mill act of this State, unlike that of Massachusetts, does not authorize a complaint for flowing lands below the dam. *Wilson* v. *Campbell*, 76 Maine, 94. The case at bar is an action at common law to recover damages for wrongfully increasing the volume of the stream so as to overflow its banks and the plaintiff's meadow. Whether or not there was an unreasonable exercise of the defendant's rights under all the circumstances of the case, was a question of fact for the determination of the jury under proper instructions. Whether the verdict was for the plaintiff or the defendant is not expressly stated, but from the fact that the exceptions are taken and presented by the plaintiff, it may be inferred that the verdict was in favor of the defendant. If so, the jury must have found that the defendant's manner of discharging the water through the gates of his dam was not an unreasonable exercise of his rights under the facts and circumstances disclosed, and the instructions given. Whether or not this conclusion was warranted by the evidence is a question not presented for the consideration of the court. The case is before the Law Court on exceptions and not upon a motion to set aside the verdict. The evidence is not before us. There was no error in the instruction, and the entry must be,

*Exceptions overruled.*