### RATTAN v. WOODS. (No. 2981.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 4, 1924.)

**1. Appeal and error ⏣930(2)—Court of civil appeals cannot assume jury failed to consider instructions.**

Court of civil appeals cannot assume jury failed to consider instructions given.

**2. Trial ⏣352(1)—Whether ditch was artificial or natural water course held plainly submitted to jury.**

In action for flooding plaintiff's land caused by damming ditch running across land, special interrogatory *held* to submit plainly issue whether ditch was an artificial or a natural water course.

**3. Waters and water courses ⏣119(3)—Upper owner may keep channel of natural water course open to carry off surface water.**

Upper owner may keep channel of natural water course open to carry off surface water naturally draining into it.

**4. Waters and water courses ⏣119(3)—Upper owner may increase flow of surface water draining into natural water course.**

Upper owner may increase rapidity of flow of surface water naturally draining into channel of natural water course, if good husbandry necessitates such increased flow.

**5. Waters and water courses ⏣126(2)—Evidence held not to show wrongful increase of flow of surface water.**

Evidence *held* not to show that an owner, contrary to Vernon's Sayles' Ann. Civ. St. 1914, art. 5011t, increased flow of surface water to injury of adjoining owner or diverted into drain surface water which otherwise would not have gone there.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Suit by J. F. Woods against R. M. Rattan. Judgment for plaintiff, and defendant appeals. Affirmed.

Cunningham, McMahon & Lipscomb, of Bonham, for appellant.

Rogers & Neilson and Wheeler & Leslie, all of Bonham, for appellee.

HODGES, J. The parties to this suit own adjoining tracts of land in Fannin county, situated near a stream called Sulphur. The land owned by Woods, the appellee, lies to the west, that owned by Rattan, the appellant, lies to the east, of their dividing line. There is a small ditch, or water course, on the land of Woods, running in a southeasterly direction across the land of Rattan, toward Sulphur. Some time during the year 1921 Rattan built a dam across that ditch, or water course, at the point where it entered upon his land. The effect of that dam was to cause the surface water collected in the ditch to overflow, inundate, and wash portions of the land owned by Woods. In June, 1921, Woods filed this suit in the district court of Fannin county, alleging that his land and crops had been damaged by the obstruction of water caused by the erection of that dam, and asking for damages and also a mandatory injunction requiring the removal of the dam and perpetually restraining its construction thereafter. Rattan answered by demurrers and a general denial, and specially pleaded that, if Woods was injured in the manner alleged in his petition, it was due to his own negligence in collecting the surface water upon his own land by the construction of ditches and drains in such manner as to divert the natural flow of the surface water and to cause the same to overflow the land of the defendant, Rattan.

He further alleged that in constructing the dam upon his land he did not divert the natural course of the surface water, but that the dam was constructed for the sole purpose of protecting the defendant's land from the surface water wrongfully impounded and diverted by plaintiff and forced upon the land of the defendant. In addition to that defensive matter appellant also pleaded for damages to his land resulting from overflows and washes resulting from the wrongful acts of the appellee. The case was submitted on the following special issues:

"Question 1. Do you find by a preponderance of the testimony that the defendant, Rattan, by erection of the levee, dam, and embankment, as alleged by plaintiff in his petition, diverted the natural flow of the surface water so as to run the same on to plaintiff's land in such manner as to injure the plaintiff's land as described by him in his petition? Answer: Yes."

In connection with that interrogatory the court gave the following instruction at the request of the appellant:

"I charge you, gentlemen of the jury, in connection with question No. 1, that defendant had the legal right to erect dams, ditches, and levees against artificial ditches and levees; and if you find from the evidence that such ditch or ditches and levees so leveed against or dammed were artificial and not made by natural drainage, then you will answer question No. 1 in the negative, regardless of what you find the other facts to be."

At the request of the appellant the court also propounded the following:

"Ques. No. 5. In the event you should answer question No. 1 'Yes,' then you are asked this question: Could the plaintiff by the outlay of a reasonable amount of money have constructed a ditch on his own land that would have prevented damage to him?"

"2. If you have answered special question No. 5 asked by the defendant 'Yes,' then you are asked, What would have been the reasonable cost to plaintiff to construct such a ditch?"

The jury answered question No. 5 "Yes," and the next, "$20." The jury further found that there had been no damages to the plaintiff's land, but that he had been injured in the destruction of his oat and corn crops in the aggregate sum of $50. The court rendered a judgment for the amount of damages found by the jury, and also granted the injunctive relief prayed for.

[1, 2] It is conceded that the appellant built the dam complained of, and that it was still there at the time of the trial of this case. Appellant contended, and offered proof to show, that the ditch was an artificial drain which had been constructed and kept open by the appellee for the purpose of draining surface water from his own land. The appellee, on the other hand, contended, and offered testimony to show, that this ditch or drain was a natural water course, and had been there for many years. That issue appears to be the controlling one in this case. Counsel for appellant contend that the court erred in refusing to submit a special interrogatory in which that question was clearly presented to the jury. They insist that the interrogatory submitted by the court did not properly submit that issue. We are of the opinion that the contention is untenable. While the issue as to the character of the ditch or drain was not clearly presented in the first question submitted by the court, the special interrogatory No. 3, requested by the appellant, and given, made the issue plain. The jury could not have given the answer they did to question No. 1 without ignoring that charge, or finding that the drain was a natural and not an artificial water course. We cannot assume that the jury failed to give proper consideration to the instructions of the court.

[3-5] Under another group of assigned errors appellant complains of the refusal of the court to submit certain special interrogatories which called for a finding as to whether or not the appellee had augmented the flow of surface water through that drain. Among others of a similar character he presented the following:

"Did plaintiff by any act of his, as alleged in defendant's answer, impound or force through the ditch in question any surface water from the land of plaintiff which, except for such act or acts, if any, on the part of the plaintiff, would not have gone through said ditch, but would have flowed south over the land of plaintiff."

The common-law rule for regulating the water rights of adjoining landowners heretofore applied in this state has been modified by a comparatively recent statute. That portion of the statute applicable to the facts of this case may be found in article 5011t, Vernon's Sayles' Civil Statutes, which is as follows:

"That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby, provided that the passage of this act shall in no way affect the construction and maintenance of levees and other improvements for the purpose of controlling floods, overflows and freshets in rivers, creeks, and streams, nor the construction of canals for the purpose of conveying waters for irrigation; and provided further that nothing in this act shall be so construed as to authorize or give authority to persons or corporations owning or constructing canals for irrigation or other purposes, to construct or maintain any canal, lateral canal or ditch in such manner as to obstruct any river, creek, bayou, gully, slough, ditch or other well-defined natural drainage."

If the drain in question was a natural water course, as distinguished from an artificial ditch constructed by the appellee, or some prior landowner, then, clearly, the appellant could not lawfully obstruct the flow of the water to the damage of the appellee. It may be true that an upper landowner may not, by the use of artificial means, divert into a natural water course surface water which would naturally flow elsewhere, and thus injure the lower proprietor. But the upper owner has the legal right to keep the channel of the natural watercourse open so that it will carry off all of the surface water which naturally drains into the channel. He may even increase the rapidity of the flow, if such becomes necessary in the art of good husbandry. Manteufel v. Wetzel, 133 Wis. 619, 114 N. W. 91, 19 L. R. A. (N. S.) 167; Martin v. Schwertley, 155 Iowa, 347, 136 N. W. 218, 40 L. R. A. (N. S.) 160; Baldwin v. Ohio Township, 70 Kan. 102, 78 P. 424, 67 L. R. A. 642, 109 Am. St. Rep. 414; 27 R. C. L. p. 1156; 3 Farnam on Water and Water Rights, pp. 2620, 2621, and cases referred to in the notes.

We have been unable to find in the record of this case sufficient evidence to support a finding by the jury that the appellee augmented the flow of water to the injury of the appellant, or that he diverted into that drain surface water which would not naturally have gone there. The testimony relied on in appellant's supplemental written argument to call for a submission of that issue evidently refers to what the appellee did several years before in cleaning out the very drain involved in this controversy. It has no reference to the opening of laterals tributary to that drain. It is true one witness stated that Woods, the appellee, made the south bank of

this drain higher, but how much higher he does not say; nor is there any evidence tending to show that the water actually flowing through that· drain after the work done by Woods was more than the ditch carried off, or that the appellant was in any manner damaged by an increased volume, if there was any. In the present state of the record, even if the jury had answered affirmatively the interrogatories propounded by counsel for appellant, the court would not have been required to render a different judgment.

In his motion for a new trial the appellant attacks the sufficiency of the evidence to support a finding that the appellee owned the crops that were damaged in 1921 by the overflow resulting from the construction of the dam. That complaint is based upon the testimony that the land was cultivated by appellee's tenant the year the injury occurred. It does not appear that the fact of ownership of the crops was seriously contested on the trial below. The assignment will be overruled. We think the evidence was sufficient to support the conclusion of the jury that the appellee owned the crops that were damaged, and had a right to maintain this action.

We find no reason for disturbing the judgment, and it will therefore be affirmed.